UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHEASTERN DIVISION

| | |
|---|---|
| RYAN TERBROCK, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:09CV0013 JCH |
| ) | |
| NICHOLAS BERRY, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendant Berry's Motion for Partial Summary Judgment ("Motion"), Doc. No. 31). This matter is fully briefed and ready for disposition.

**BACKGROUND**

On May 15, 2009, Plaintiff filed a five count complaint against Defendant Berry, Defendant Burns, and Defendant Selby. (Plaintiff's First Amended Complaint ("Compl." or "Complaint"), Doc. No. 5).[1] Plaintiff alleges that on March 31, 2007, he was attacked outside of a bar in Kirksville, Missouri by at least two assailants. (Compl., ¶¶ 10, 11). After receiving a radio call of a disturbance at the bar, Defendant Berry approached the scene and crowd. (Suggestions in Support of Defendant Berry's Motion for Partial Summary Judgment ("Memorandum") Doc. No. 32, p. 3). Defendant Berry claims that he approached an older man, later identified as James Montgomery, who appeared to have been injured in the fight, and asked him, "Who did this to you?" (Memorandum, p. 3). Defendant Berry asserts that the man replied, "the guy in the red shirt," and pointed to Plaintiff.

---

[1]Plaintiff filed his original Complaint on March 31, 2009. (Doc. No. 1). Defendant Selby was not a named defendant in the original Complaint.

1

(Memorandum, p. 3). Defendant Berry then approached Plaintiff and led him to a street bench nearby, without handcuffing Plaintiff. (Compl., ¶¶ 12-14; Memorandum, p. 3; Berry deposition, Doc. No. 33-3, p. 153). Berry told Plaintiff that he was not under arrest. (Berry deposition, Doc. No. 33-3, pp. 153-54). After approximately twenty seconds, upon urging by his brother, Plaintiff left the bench and walked away from the scene. (Terbrock deposition, Doc. No. 33-1, p. 81). Defendant Berry was informed by someone in the crowd that Plaintiff was walking away, and pursued him on foot. (Memorandum, p. 4). Defendant Berry alleges he shouted "Stop!" two to three times in his pursuit of Plaintiff, issuing "the commands really close in proximity to the back of his head." (Id.; Berry Deposition, Doc. No. 32-1, p. 154). Plaintiff denies hearing any commands from Defendant Berry, as "there were too many people, too much noise." (Terbrock deposition, Doc. No. 32-2, p. 124). Defendant Berry admits that he "didn't see any physical signs that [Plaintiff] was making any gestures that he heard me." (Berry deposition, Doc. No. 33-3, p. 178). Defendant Berry claims he attempted to detain Plaintiff by placing an arm "over his right shoulder" but Plaintiff continued walking. (Berry deposition, Doc No. 33-3, p. 155). Defendant Berry claims he then attempted to place Plaintiff in a chokehold to stop him from walking away, but Plaintiff took "two, three, four" steps with Defendant Berry's arms around Plaintiff's neck. (Berry deposition, Doc. No. 33-3, pp. 156-58). Defendant Berry then alleges that, because Plaintiff was still continuing to walk away while being physical restrained, Defendant Berry "opted to basically to (sic) trip him, to pull him down basically, pull him down backwards." (Berry deposition, Doc. No. 33-3, p. 158; Compl.,¶¶ 15, 20, 22).

In Count I, Plaintiff alleges the use of excessive force, by all named Defendants, in violation of the Fourth and Fourteenth Amendments, under 42 U.S.C. §1983. (Compl., ¶¶ 26-31). Count II alleges unlawful seizure by arrest and detention by Defendant Berry, in violation of the Fourth and Fourteenth Amendments, under 42 U.S.C. §1983. (Compl., ¶¶ 32-37). Count III alleges assault and

2

battery, by all named Defendants, under Missouri state law. (Compl., ¶¶ 38-41). Count IV alleges false arrest or imprisonment by Defendant Berry under Missouri state law. (Compl., ¶¶ 42-46). Count V alleges malicious prosecution by Defendant Berry under Missouri state law. (Compl., ¶¶ 47-53). On April 28, 2010, Defendant Berry filed a Partial Motion for Summary Judgment, requesting the dismissal of Counts II, IV, and V. (Doc. No. 31).

## SUMMARY JUDGMENT STANDARD

Summary judgment is granted if there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Only issues of "material fact," issues that may affect the outcome, justify denial of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if a reasonable jury could find for the non-movant. Id.

Facts are viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp. v. Citrate, 477 U.S. 317, 331 n. 2 (1986). The Court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to rule on a summary judgment motion. Id. at 322. The Court does not weigh the evidence, but rather determines whether a genuine issue of material fact exists to justify a trial. Anderson, 477 U.S. at 249. Once the movant satisfies his burden of showing grounds for summary judgment, the non-movant must set forth specific facts beyond mere allegations of a factual dispute, demonstrating there is a genuine issue of material fact. Id. at 248.

## DISCUSSION

## I.       Count II

In Count II, Plaintiff alleges unlawful seizure by arrest and detention, in violation of the Fourth and Fourteenth Amendment, under 42 U.S.C. § 1983. (Compl.,¶ 34).[2] In his Complaint, Plaintiff alleges that Defendant Berry "maliciously, and without reasonable grounds or probable cause, arrested and detained Plaintiff." (Compl., ¶ 33). Defendant Berry asserts probable cause and qualified immunity as defenses to Count II. (Defendant Berry's Answer to Plaintiff's First Amended Complaint ("Answer"), Doc. No. 7, p. 1).

### A.       Fourth Amendment

The Fourth Amendment guarantees that all persons be free from unreasonable searches and seizures. If a "seizure" occurs by state law enforcement officers pursuant to the Fourth Amendment, the claim "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). To establish a Fourth Amendment violation, the Court must determined whether 1) a seizure occurred and 2) if the seizure was reasonable. McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003) (citing Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999)).[3]

Under a §1983 claim for a Fourth Amendment violation, if no seizure has occurred, no

---

[2]Under 42 U.S.C. §1983, a plaintiff must prove that a person acting "under color of any statute, ordinance, regulation, custom, or usage of any State . . ." deprived him or her of a "right, privilege, or immunity secured by the Constitution and laws." The parties do not dispute that Defendant Berry was acting under color of state law. (Answer, p. 2).

[3]Under the substantive due process clause of the Fourteenth Amendment, the state may not deprive a person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Fourth Amendment applies to the states as incorporated by the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961). Plaintiff's claim arises under the Fourth Amendment, not under the due process clause of the Fourteenth Amendment and a separate "due process" analysis need not be done. Graham, 490 U.S. at 395.

Constitutional rights have been infringed upon, and the §1983 claim must be dismissed. Florida v. Royer, 460 U.S. 491, 498 (1983). A Fourth Amendment seizure occurs when "an officer restrains an individual's liberty through physical force or a show of authority." Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009) (quoting McCoy, 342 F.3d at 846). A person is seized by physical force when "an action intended to result in physical force actually results in physical contact." Johnson v. Grob, 928 F. Supp. 889, 896 (W.D. Mo. 1996). In determining if a seizure occurs through show of authority, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991). As a seizure determination depends on the facts at the moment of the seizure, "the Court does not ask whether there was a seizure in general, but instead determines whether a seizure existed at each discrete moment or event." Johnson, 928 F. Supp. at 896.

**B.     Seizure**

The parties dispute whether, and at what time, Plaintiff was unreasonably "seized" by Defendant Berry. (Compl.,¶ 33; Memorandum, p. 8). If a Fourth Amendment seizure has occurred, the Court must then determine if it was reasonable under the circumstances. McCoy, 342 F.3d at 846.

1.     Plaintiff asked to sit on the bench

The parties dispute whether Plaintiff was "seized" when Defendant Berry asked Plaintiff to sit on the bench. (Plaintiff's Memorandum in Opposition to Defendant Berry's Motion for Partial Summary Judgment on Counts II, IV, and V("Opposition"), pp. 3-4, 8-9). Plaintiff claims that he was not "detained at any time prior to the custodial arrest where he was choked unconscious and had his bones broken." That is, Plaintiff asserts that he was not subject to a Terry stop when Defendant Berry guided him to a bench during his initial investigation. (Opposition, pp. 8-9).

Under Terry, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "For an investigative Terry-type seizure to be constitutional under the Fourth Amendment, an officer must be aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Donnelly, 475 F.3d 946, 952 (8th Cir. 2007) (citing United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)); see also United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008) (citing Terry, 392 U.S. at 27) ("But reasonable suspicion is more than an inarticulable hunch, it must instead be based on specific and articulable facts, which taken together with rational inferences, support the stop."). To determine whether the police had reasonable suspicion, the Court examines the totality of the circumstances "'through the eyes of the officers, because they are trained to cull significance from behavior that would appear innocent to the untrained observer.'" Gannon, 531 F.3d at 661 (quoting United States v. Barker, 437 F.3d 787, 789 (8th Cir. 2006)).

Plaintiff claims that Defendant Berry did not detain him pursuant to a Terry stop in his initial interaction with Plaintiff, but that he was free to leave at any time. (Opposition, p. 8). Defendant Berry requested Plaintiff remain at the scene. See Memorandum, p. 3 ("Mr. Terbrock testified that Defendant Berry politely asked him to have a seat on a nearby bench."); see also Misdemeanor Information, Doc. No. 33-7, p. 2 ("I then told Terbrock he needed to remain at the scene and guided him to a bench in front of the bar."). Plaintiff claims that, after Defendant Berry requested that he sit on a bench near the scene of the fight, he thought he was free to leave. (Opposition, pp. 3-4). Defendant Berry attested that he did not place Plaintiff under arrest because he had only spoken with the victim and he wanted to interview several other witnesses to the assault. (Misdemeanor

6

Information, Doc. No. 33-7, p. 2).

In support of his assertion that he was not subject to a <u>Terry</u> stop, Plaintiff notes that "Defendant did not exhibit or employ any of those investigative law enforcement tools or functions set out in <u>Terry</u> or <u>Mendenhall</u>[4] before walking away from Plaintiff." (Opposition, pp. 9-10). Specifically, "Plaintiff was never searched for weapons or [was] otherwise frisked[.]" (<u>Id.</u>) Plaintiff claims that he was not questioned by Berry and did not have any conversations with Berry. (<u>Id.</u>) Plaintiff asserts that "Defendant Berry did not ask Plaintiff for identification, or even request Plaintiffs [sic] name." (<u>Id.</u>) Plaintiff asserts that he believed he was free to leave and, consequently, walked away. (<u>Id.</u>)

In contrast, Defendant Berry claims that he made a <u>Terry</u> stop of Terbrock when he told him to sit on the bench. (Memorandum, p. 8). Defendant Berry claims that he had reasonable suspicion to perform a <u>Terry</u> stop of Plaintiff because the "victim," Mr. Montgomery, identified Plaintiff has his assailant. (Memorandum, p. 8; Defendant Berry's Reply to Plaintiff's Response to Defendant Berry's Motion for Partial Summary Judgment ("Reply"), Doc. No. 34, p. 2).

The Court finds an genuine issue of material fact regarding whether Plaintiff was "seized" at the time Defendant Berry requested Plaintiff remain on the scene. The jury will have to determine if Defendant Berry detained Plaintiff pursuant to a <u>Terry</u> stop when Defendant Berry told him to sit on the bench.[5]

---

[4]<u>United States v. Mendenhall</u>, 446 U.S. 544 (1980).

[5]Defendant argues that it is "irrelevant" whether his initial encounter with Plaintiff constituted a <u>Terry</u> stop. (Reply, p. 4). The Court disagrees. Plaintiff's allegations in Count II relate to both his arrest and to any pre-arrest detention. <u>See</u> Compl., ¶ 33 ("Defendant Berry maliciously, and without reasonable grounds or probable cause, arrested and detained Plaintiff.").

For these same reasons, the Court also finds an issue of fact regarding whether the seizure, if there was one, was reasonable. The jury must determine what Defendant Berry knew at the time he detained Plaintiff and whether that was sufficient cause to support a <u>Terry</u> stop.

7

2. Arrest

In contrast, the parties do not dispute that Plaintiff was seized when he was subdued and arrested. An arrest is a "seizure" as defined by the Fourth Amendment. United States v. Watson, 423 U.S. 411, 428 (1976). The uncontroverted evidence demonstrates that Plaintiff was "seized" when he was detained and subsequently arrested by Defendant Berry. (Compl., ¶ 21; Memorandum, pp. 7-9). Therefore, the Court finds that Plaintiff, when arrested, was "seized" by physical force as a matter of law. Having found that the arrest constituted a seizure, the Court must then determine if the seizure satisfies the reasonableness requirement of the Fourth Amendment. McCoy, 342 F.3d at 846.

**C. Objective Reasonableness**

"[A] seizure, standing alone, is not sufficient for section 1983 liability. The seizure must be unreasonable." McCoy, 342 F.3d at 847 (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999)). Courts "analyze an excessive force claim under the Fourth Amendment's 'objective reasonableness' standard." McCoy, 342 F.3d at 847-48 (citing Graham, 490 U.S. at 395-97). "The reasonableness of force depends on the facts and circumstances of each case accounting for '[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officer or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" McCoy, 342 F.3d at 848 (citing Graham, 490 U.S. at 396). The seizure must be adequately justified with probable cause for an arrest. Johnson, 928 F. Supp. at 901 (quoting U.S. v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995)).

Having determined that Plaintiff was "seized" under the Fourth Amendment when he was arrested, the Court must then determine if the seizure was reasonable. Defendant Berry claims that

8

the seizure was reasonable because it was supported by probable cause that Plaintiff was resisting arrest and had committed assault. (Memorandum, p. 8)(when plaintiff decided to "disregard Corporal Berry's order to be seated and walk[ed] away," Plaintiff "provided probable cause for Corporal Berry to believe that he was resisting arrest"). The Court must determine if there is a genuine issue of material fact regarding whether the arrest for resisting arrest and assault was justified by probable cause.

1. Probable Cause for Resisting Arrest

"Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983) (citations omitted). "[T]he test for probable cause is 'reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged.'" Cook v. City of Bella Villa, Doc. No. No. 4:06-CV-01531, 2008 U.S. Dist. LEXIS 28560, at *18 (E.D. Mo. Apr. 8, 2008) (citing Parker v. Color Tile Supermart, Inc., 655 S.W.2d 598, 599 (Mo. Ct. App. 1983); Palermo v. Cottom, 525 S.W.2d 758, 764 (Mo. Ct. App. 1975)). Probable cause does not require the amount of proof needed to sustain a conviction, but it "must rise above the mere suspicion of criminal activity." State v. Gant, 490 S.W.2d 46, 48 (Mo. 1973) (quoting Clay v. U.S., 394 F.2d 281, 285 (8th Cir. 1986)).

Defendant Berry asserts that he had probable cause to arrest Plaintiff because he was resisting arrest. The question is whether a reasonable officer under the circumstances would believe Plaintiff 1) knew he was being arrested or detained, 2) fled from law enforcement officer Defendant Berry, 3) for the purpose of preventing Defendant Berry from making the arrest, stop, or detention.

9

§575.150.⁶ Defendant Berry asserts that he reasonably detained Plaintiff in a Terry-type stop when he asked Plaintiff to sit on a bench while Berry investigated the scene and tried to control the crowd. (Memorandum, p. 8). "[W]hen Mr. Terbrock decided, for whatever reason, to disregard Corporal Berry's order to be seated and walk[ed] away, Mr. Terbrock provided probable cause for Corporal Berry to believe that he was resisting arrest." (Memorandum, p. 8).

The Court finds a genuine issue of material fact as to whether Defendant Berry had probable cause to seize Plaintiff for resisting arrest. The Court finds an issue of fact regarding whether a reasonable officer would believe that Plaintiff knew he was being arrested and that the officer would believe that Plaintiff fled law enforcement for the purpose of preventing Defendant Berry from making the arrest. Plaintiff asserts that he thought he was "free to leave" and that he did not hear Defendant Berry yell "Stop!" when he was walking away from the scene. (Opposition, p. 4). Additionally, Defendant Berry admits he "didn't see any physical signs that [Plaintiff] was making any gestures that he heard me." (Berry deposition, Doc. No. 33-3, p. 178).

Moreover, the Court finds a genuine issue of material fact as to whether a reasonable officer would believe, under the circumstances, that Plaintiff was fleeing Defendant Berry for the purpose of "preventing the officer from effecting the arrest, stop or detention." §575.150. Neither side alleges that Plaintiff was purposefully evading Defendant Berry in order to avoid being arrested or detained. (Memorandum, pp. 8-9; Opposition, p. 13). In fact, neither side alleges *any* motive Plaintiff had for walking away from the scene. (Id.) Thus, the Court finds a genuine issue of material fact concerning

---

⁶A charge of resisting arrest, under Missouri law, makes it a crime for a person who either knows or "reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual . . . for the purpose of preventing the officer from effecting the arrest, stop or detention" to "resist the arrest, stop, or detention of such person by using or threatening the use of violence or physical force *or by fleeing from such officer*." Mo. Rev. Stat. §575.150 (2007) (emphasis added).

whether the arrest and seizure for resisting arrest was justified.

        2.        Probable Cause for Assault

Defendant claims that he had probable cause to arrest Plaintiff for assault. Montgomery identified Terbrock as the person who assaulted him. (Memorandum, pp. 3, 6). Defendant Berry asserts that "the identification of Mr. Terbrock by Mr. Montgomery as the person who assaulted him is sufficient to have established probable cause to have justified Mr. Terbrock's arrest." (Memorandum, pp. 7-8).

Under Missouri law, "a person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Mo. Rev. Stat. §5765.050 (1979). A suspect must "either 1) attempt to kill; 2) knowingly cause serious physical injury to another person; or 3) attempt to cause serious physical injury to another person." State v. Thomas, 972 S.W.2d 309, 312 (Mo. Ct. App. 1998). Assault requires "that the person charged must have acted willfully and knowingly." Id. at 313.

The Court finds an issue of fact regarding whether a reasonable and prudent officer would believe Plaintiff had committed an assault at the time he was arrested. Defendant Berry testified that at the time he requested that Plaintiff remain on the bench, he had "decided not to arrest [Plaintiff]" for assault. (Berry deposition, Doc. No. 33-3, p. 154). A reasonable jury could find an issue of fact regarding whether that the arrest was not justified as a matter of law. Therefore, the Court finds a genuine issue of material fact regarding the reasonableness of Plaintiff's arrest for assault, which must be determined by a jury.

**D.**        **Qualified Immunity**

Defendant Berry asserts that Plaintiff's claim in Count II is barred by qualified immunity. (Memorandum, p. 9). "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009) (citing Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006)). To overcome a defendant's qualified immunity claims, the plaintiff must show that: "'(1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation.'" Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010)(quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)). A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). If a state official violates a clearly established constitutional right, he/she is not entitled to qualified immunity. Harlow, 457 U.S. at 818-19.

An analysis of qualified immunity must be judged in light of "the circumstances from the perspective of a reasonable officer following customary police practices," rather than through a "20/20 hindsight" perspective. McCoy, 342 F.3d at 849 (citing Graham, 490 U.S. at 396). "The reasonableness inquiry, however, is an objective one: 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.'" Brown, 574 F.3d at 496 (citing Graham, 490 U.S. at 397). "Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting

to evade arrest by flight.'" Brown, 574 F.3d at 496 (citing Graham, 490 U.S. at 396).

Given the circumstances surrounding Plaintiff's seizure and arrest, the Court finds an issue of fact regarding whether Defendant Berry's use of force was unreasonable or violated Plaintiff's known constitutional right. Defendant Berry claims that he suspected that Plaintiff had assaulted another person and then Defendant Berry believed that Plaintiff was resisting arrest by leaving the scene of the crime. Defendant Berry, however, admitted that he did not arrest Plaintiff because he did not have sufficient information that he committed assault. (Misdemeanor Information, Doc. No. 33-7, p. 2). At most, Plaintiff had been subject to a Terry stop when he left the bench and walked away from the scene. The evidence also indicates that Plaintiff did not "flee" but walked away at a normal pace. Given the alleged severity of Plaintiff's injuries, the Court finds an issue of fact regarding whether Defendant Berry is entitled to qualified immunity with respect to Count II. Therefore, Defendant's Motion for Partial Summary Judgment on Count II is denied.

**II.  Defendant is Entitled to Summary Judgment on Counts IV and V**

In Count IV, Plaintiff alleges he was falsely arrested or imprisoned for resisting arrest and assault. (Compl., ¶¶ 42-46). In Count V, Plaintiff alleges a claim for malicious prosecution because Defendant Berry caused the criminal charge of resisting lawful detention in violation of Missouri Statute §575.150 to issue against Plaintiff and assisted in the prosecution of said charge. (Compl., ¶¶ 47-53). Defendant Berry claims Count IV and Count V are barred by official immunity. (Memorandum, p. 13).[7]

**A.  Underlying State Claims**

---

[7]Defendant Berry also alleges lack of probable cause, but this Court decides these claims based solely upon official immunity grounds.

13

### 1. False Imprisonment

Under Missouri law, false imprisonment or false arrest occurs "when the plaintiff is confined by the wrongdoer without legal justification." Rankin v. Venator Group Retail, Inc., 93 S.W.3d 814, 822 (Mo. Ct. App. 2002) (citing Hyatt v. Trans World Airlines, Inc., 943 S.W.2d 292, 299 (Mo. Ct. App. 1997)). Plaintiff must prove: 1) detention or restraint against his or her will and 2) that the detention or restraint was unlawful. Id.

### 2. Malicious Prosecution

To successfully bring a claim of malicious prosecution under Missouri law, a plaintiff must prove: 1) commencement of an earlier suit against plaintiff, 2) instigation of the lawsuit by the defendant, 3) termination of the suit in plaintiff's favor, 4) lack of probable cause for the suit, 5) malice by the defendant in bringing the suit, and 6) damage to plaintiff resulting from the suit. Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 807 (Mo. banc 1984). Malicious prosecution actions "have never been favorites of the law." Id. at 806. "The nature of this cause of action, therefore, has led courts to require strict proof of each element of the tort." Id. (citation omitted).

A person may be liable for malicious prosecution if "the proceedings [were] initiated primarily for a purpose other than that of bringing the offender to justice." Sanders, 682 S.W.2d at 814 (citing Restatement of Torts (Second) § 668 (1965)). Thus, "there must be intent to cause the harm, not merely to commit the act which causes the harm." Id. at 813.

### B. Official Immunity

"Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of

their official duties." McLean v. Gordon, 548 F.3d 613, 617 (8th Cir. 2008). "Official immunity does not, however, shield officials for liability arising from their negligent performance of ministerial acts or functions." Id. (citing James ex rel. James v. Friend, 458 F.3d 726, 731 (8th Cir. 2006)). Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or pursued." Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984)(quoting Jackson v. Wilson, 581 S.W.3d 39, 43 (Mo. Ct. App. 1979)). A ministerial act is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id. The analysis of the act in question "must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." Kanagawa v. State, 685 S.W.2d 831, 836 (Mo. 1985). "However, 'official immunity does not apply to discretionary acts done in bad faith or with malice.'" Scherrer v. City of Bella Villa, No. 4:07-CV-306, 2009 U.S. Dist. LEXIS 13489, at *17 (E.D. Mo. Feb. 20, 2009) (citing Blue v. Harrah's North Kansas City, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005)).

Initially, the Court finds, as a matter of law, that Defendant's actions in Counts IV and V were discretionary. Defendant Berry's decision to arrest Plaintiff is discretionary as a matter of law. "Deciding whether or not to arrest someone is a matter of discretion--the officer must decide what course should be pursued based on the circumstances at hand." Richardson v. Bd. of Police Comm'Rs of Kan. City, No. 04-0351, 2006 U.S. Dist. LEXIS 576, at *22-23 (W.D. Mo. Jan. 10, 2006); Blue, 170 S.W.3d at 479. Likewise, Defendant Berry's underlying acts supporting the malicious prosecution claim are discretionary acts. "The investigation of a crime is a discretionary

15

act, not a ministerial one." Reasonover v. St. Louis County, 447 F.3d 569, 585 (8th Cir. 2006); see also Richardson, 2006 U.S. Dist. LEXIS 576, at *23 ("Because arresting [and prosecuting] someone is a discretionary act, the issue here is whether Defendant acted in bad faith or with malice, removing the protection of official immunity." ).

### 1. No Evidence of Malice

"A defending party in a malicious prosecution [or false imprisonment] action may establish a right to summary judgment by showing facts which negate any one of the plaintiff's elements." Jackson v. Calcaterra, No. 4:06 CV 995, 2008 U.S. Dist. LEXIS 36052, at *17 (E.D. Mo. May 1, 2008) (citing Thompson v. Wal-Mart Stores, Inc., 890 S.W.2d 780, 782 (Mo. Ct. App. 1995)). Official immunity applies unless the arrest was done in bad faith or with malice. Wilson v. City of Hazelwood, 530 F. Supp. 2d 1059, 1068 (E.D. Mo. 2007). Malice is "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Samuelson v. City of New Ulm, 455 F.3d 871, 878 (8th Cir. 2006); Hansen v. Tietz, No. 03-969, 2004 U.S. Dist. LEXIS 6423, at *19 (D. Minn. Apr. 12, 2004) ("Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited."). "An officer does not commit a willful and malicious wrong unless the officer relies on information that the officer knows to be false." Thomas v. Drover's Inn Assocs., No. 02-1682, 2003 U.S. Dist. LEXIS 20979, at *17 (D. Minn. Nov. 13, 2003). A plaintiff cannot rely on "bare allegations of malice" to overcome a defense based on official immunity. Harlow, 457 U.S. at 817. A plaintiff must present specific facts evidencing bad faith. Clark v. Pielert, No. 07-3649, 2009 U.S. Dist. LEXIS 126, at *27 (D. Minn. Jan. 5, 2009) (citation omitted).

Here, Plaintiff has presented no evidence that indicates Defendant Berry's actions were

motivated by bad faith or malice. See Memorandum, p.12; Opposition, p. 15; but see Compl., ¶ 50 ("Plaintiff claims that Defendant Berry caused the charges to issue because he "sought to protect himself from civil and/or criminal liability for the unlawful treatment, assault and battery of Plaintiff and his use of excessive force against Plaintiff[.]"). Rather, Defendant Berry appears to have been acting out of public concern. See Berry deposition, Doc. No. 32-1, p. 135 ("I was kind of concerned about the crowd."). See Ihekoronye v. City of Northfield, Doc. No. 07-CV-1642, 2008 U.S. Dist. LEXIS 26386, at *25 (D. Minn. Mar. 31, 2008) (finding defendants were entitled to official immunity in a false arrest and malicious prosecution case, where Plaintiff introduced no evidence of malice). Furthermore, Defendant Berry "did not say or do anything during the seizure that would indicate his actions were motivated by malicious intent." Wertish v. Krueger, No. 03-5163, 2004 U.S. Dist. LEXIS 22800, at *19 (D. Minn. Nov. 5, 2004). Plaintiff has not produced evidence to suggest that Defendant Berry intentionally arrested and detained the Plaintiff for resisting arrest while knowing he had no probable cause to do so. Nor did Defendant Berry rely on information that he knew was false. Hansen, 2004 U.S. Dist. LEXIS 6423, at *21. Also, Plaintiff has produced no evidence that the decision to detain Plaintiff for resisting arrest was not based on a subjective good faith belief that Plaintiff was resisting arrest. The proffered evidence unequivocally demonstrates that Defendant Berry did not arrest Plaintiff or instigate the criminal prosecution with malice. Defendant Berry is entitled to summary judgment on this claim. Thus, the Court finds Defendant Berry is entitled to official immunity as a matter of law.[8] The Court grants summary judgment to Defendant Berry on

---

[8]In addition, the Court notes that Plaintiff did not allege a malicious prosecution claim against the state prosecutor. Plaintiff's claim also fails because he has not included the actions of the prosecutor. See Jacobson v. Mott, No. 07-4420, 2009 U.S. Dist. LEXIS 3207, at *34-35 (D. Minn. Jan. 15, 2009) ("An officer's fabrication standing alone may lead to a constitutional claim, as discussed above, but it does not also establish a state law malicious prosecution claim unless the prosecutor is involved. This is true because, while a law enforcement officer's statements to a prosecutor may certainly influence the direction of a case, such statements do not overshadow the independent judgment applied to criminal prosecutions by the prosecuting authority."). Plaintiff

17

Plaintiff's false imprisonment and malicious prosecution claims.

Accordingly, Defendant's Motion for Partial Summary Judgment on Counts IV and V is granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. No. 31) is **GRANTED**, in part, and **DENIED**, in part. The Court denies Defendant's Motion for Partial Summary Judgment with respect to Count II.

**IT IS FURTHER ORDERED** that Counts IV and V of Plaintiff's Amended Complaint (Doc. No. 5) are dismissed with prejudice.

Dated this 3rd day of August, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

cannot make the showing that the claims against him were both "initiated" and "prosecuted" with malicious intent and, consequently, his malicious prosecution claim fails as a matter of law. Id.